UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAYLOR HUNT,

               Plaintiff,

vs.

METROPOLITAN LIFE INSURANCE
COMPANY and the HAVI GROUP LP
HEALTHCARE SURVIVOR DISABILITY PLAN,

               Defendants.

Case No. 2:12-cv-11231-GAD-RSW

Hon. Gershwin A. Drain

_____/

| | |
|---|---|
| Patrick Derkacz (P48988) | David M. Davis (P24006) |
| Kevin J. Peters (P53771) | Attorney for Defendants |
| Attorneys for Plaintiff | Hardy, Lewis & Page, P.C. |
| Serafini, Michalowski, Derkacz & Assoc. | 401 South Old Woodward Avenue |
| 44444 Mound Road | Suite 410 |
| Suite 100 | Birmingham, Michigan 48009 |
| Sterling Heights, Michigan 48314 | Telephone: (248) 645-0800 |
| Telephone: (586) 264-3756 | E-Mail: dmd@hardylewis.com |
| E-Mail: | |

_____/

**MOTION OF DEFENDANTS METROPOLITAN LIFE INSURANCE
COMPANY AND THE HAVI GROUP LP HEALTHCARE SURVIVOR
DISABILITY PLAN TO AFFIRM THE ADMINISTRATOR'S DETERMINATION**

NOW COME the Defendants Metropolitan Life Insurance Company ("Defendant" or "MetLife") and the HAVI Group LP Healthcare Survivor Disability Plan ("Plan"), by and through their attorney David M. Davis of the law firm of Hardy, Lewis & Page, P.C., and move to Affirm the Administrator's Determination. Alternatively, Defendants, pursuant to the procedural framework required by Wilkins v. Baptist Health Care Systems, Inc., 150 F.3d 609 (6th Cir. 1998), move for entry of judgment based on the Administrative Record. In support of this Motion, Defendants state as follows:

1.      Plaintiff Taylor Hunt ("Plaintiff"), an employee of the HAVI Group ("HAVI"), commenced this action against Defendants MetLife and the Plan on March 20, 2012, by filing her Complaint in this Court.

2.      As an employee of HAVI, Plaintiff participated in the Plan. Under the Plan if a participant insured for long term disability ("LTD") benefits establishes that due to sickness or as a direct result of accidental injury she is receiving appropriate care and treatment and complying with requirements of treatment, she is unable to earn during the Elimination Period (180 days)  and the next 24 months of sickness or accidental injury, more than 80 % of predisability earnings at her own occupation from any employer in the local economy and, after such period more than 80% of predisability earnings from any employer in the local economy at any gainful occupation for which she is reasonably qualified taking into account training education and experience, she will be entitled to receive LTD benefits.

3.      Claims for disability benefits under the Plan are administered by MetLife and it has the responsibility for making initial benefit eligibility determinations. Thereafter, under the Plan, a participant may appeal to MetLife for a further review of the claim.

4.      Because the Plan is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. 1001 *et seq*., Plaintiff's claim for LTD benefits arises exclusively under federal law. Further, because the Plan delegates to MetLife, the Claims Administrator, discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits, MetLife's determinations are reviewed by the Court under the arbitrary and capricious standard of review.

5.      The Court's review is limited to the Administrative Record, namely the documents and evidence submitted to, and/or considered by MetLife at the time it made its final determination.

- 2 -

6.      Plaintiff worked for HAVI as Director of Digital Promotions, a sedentary level job. In March 2009, Plaintiff fell out of bed apparently suffering an injury. HAVI accommodated Plaintiff by allowing her to work from home until December 21, 2009. Plaintiff last worked on December 21, 2009.

7.      Plaintiff's job was sedentary, sitting up to 7-8 hours, standing 1-2 hours and walking 3-4 hours per day. No bending, twisting, climbing, reaching above shoulder level, stooping kneeling or lifting was required.

8.      In May, 2010, Plaintiff applied for LTD benefits under the Plan. On May 25, 2010, MetLife wrote to Plaintiff enclosing the necessary paperwork for her to complete and return.

9.      On July 8, 2010, after reviewing the information provided by Plaintiff in support of her claim, MetLife advised that no LTD benefits were payable under the terms of the Plan. MetLife stated the definition of disability under the Plan and advised that the information / forms that were requested by its May 25, 2010 letter had not been received. Lastly, MetLife advised Plaintiff of her appeal rights.

10.     On January 2, 2011, Plaintiff submitted 328 pages, via 30 separate facsimiles, of additional documentation in support of her claim for LTD benefits. A review of the 328 pages submitted revealed little objective findings supporting disability, but recitations of Plaintiff's subjective complaints.

11.     On January 18, 2011, MetLife referred Plaintiff's claim file to Dr. Ephraim K. Brenman, an Independent Physician Consultant ("IPC") Board Certified in Physical Medicine and Rehabilitation to opine on Plaintiff's functional limitations. Dr. Brenman reviewed the documentation submitted by Plaintiff and opined that the medical information does not support functional limitations precluding sedentary employment.

- 3 -

12.     On February 9, 2011, MetLife, in providing Plaintiff with a full and fair review of her claim, sent a copy of Dr. Brenman's report to Dr. James Lewerenz, Plaintiff's treating family practitioner, and sought his comments and supporting medical records. Dr. Lewerenz responded on March 1, 2011, advising that Plaintiff had been totally disabled since December 2, 2009 and providing diagnoses of lumbar spondylolysis [sic], adrenal fatigue, chronic pain, gait disturbance, fibromyalgia, depression and dysomnia. No clinical information supporting these diagnoses was provided.

13.     On March 21, 2011, MetLife advised Plaintiff that after considering the information submitted in support of her claim and reviewing the Plan provisions, her claim remained denied. MetLife explained that there is no medical evidence that would support any functional limitations that would restrict Plaintiff from returning to work.

14.     On September 16, 2011, Plaintiff, through her counsel, submitted her appeal. In support of the appeal, Plaintiff attached medical records from her treating physicians and articles regarding fibromyalgia and a statement from Dr. Lewerenz.

15.     MetLife referred Plaintiff's entire claim file to Dr. Jane T. St. Clair, an Independent Physician Consultant ("IPC"), Board Certified in Occupational Medicine and Anesthesiology, to opine regarding Plaintiff's restrictions and limitations. Dr. St. Clair's November 11, 2011 report recounted her efforts in contacting Plaintiff's treating providers. Dr. St. Clair did speak with Dr. Diane Hallinen, one of Plaintiff's treating physicians - acupuncture, who opined that Plaintiff had a variant of the usual fibromyalgia, walks slowly, doubted the diagnosis of mixed connective tissue disease and commented on Plaintiff's reluctance to seek psychological help. Dr. Carla Guggenheim, Internal Medicine and Rheumatology, advised that upon examination there are no findings on

examination to support an impairment precluding sedentary employment although Plaintiff did have a positive ANA,[1] positive rheumatoid factor[2] and a positive HLA-B27.[3]

16.     Dr. St. Clair opined that the medical information did not support functional limitations continuously from December 22, 2009, through the present. She explained that Ms. Hunt has largely self-reported subjective complaints of pain. Dr. St. Clair noted that Dr. Guggenheim had examined Plaintiff most recently and stated that there were no exam findings supporting Plaintiff's inability to function in the work place. Dr. St. Clair noted that Plaintiff's imaging studies were normal and did not provide significant findings to explain her pain complaints.

17.     In providing a full and fair review, MetLife provided the St. Clair report to Plaintiff's treating providers with a request that they review and comment on the report and to provide supporting medical documentation. Only Dr. Rosanne Butera, Plaintiff's chiropractor, submitted additional documentation. Dr. Butera stated that she had not seen her patient since February 19, 2010.

18.     On January 20, 2012, MetLife advised Plaintiff's counsel, that after a full and fair review of Plaintiff's claim file, including the opinions of her treating providers and the IPC reports, it determined that under the Plan, its adverse determination must be upheld.

19.     By her Complaint against MetLife, Plaintiff challenges the administrative determination of MetLife that under the Plan she was not eligible for LTD benefits.

---

[1]     In most cases, a positive ANA test indicates that your immune system has launched a misdirected attack on your own tissue — in other words, an autoimmune reaction. But some people have positive ANA tests even when they're healthy.

[2]     Rheumatoid factor can sometimes be present in normal individuals without diseases. This occurs more frequently in people with family members who have rheumatoid arthritis.

[3]     Most people who have ankylosing spondylitis have the HLA-B27 gene. But many people who have this gene never develop ankylosing spondylitis.

20.     Defendants contend that the MetLife determination made under the Plan should be upheld because such determination is rational and reasonable based on the substantial evidence in the Administrative Record and the fact that there is insufficient objective evidence supporting functional limitations precluding Plaintiff from engaging in sedentary employment beyond December 23, 2010.

21.     On October 23 2012, counsel for Defendants contacted Plaintiff's counsel and advised that it was filing this Motion to Affirm the Administrator's Determination, explained the rationale supporting this Motion and requested concurrence in the relief. Such concurrence was denied making it necessary to bring this Motion on for hearing.

WHEREFORE, Defendants MetLife and the Plan respectfully request that this Court affirm the Administrator's determination based on the Administrative Record, allow Defendants to recover their costs and reasonable attorney fees incurred in defending this action, and award it such other and further relief as may be appropriate.

Respectfully submitted,

s/ David M. Davis
David M. Davis (P24006)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue
Suite 410
Birmingham, Michigan 48009
Telephone: (248) 645-0800
E-Mail: dmd@hardylewis.com

Dated: November 1, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAYLOR HUNT,

        Plaintiff,

vs.

        Case No. 2:12-cv-11231-GAD-RSW

        Hon. Gershwin A. Drain

METROPOLITAN LIFE INSURANCE
COMPANY and the HAVI GROUP LP
HEALTHCARE SURVIVOR DISABILITY PLAN,

        Defendants.

_____/

| | |
|---|---|
| Patrick Derkacz (P48988) | David M. Davis (P24006) |
| Kevin J. Peters (P53771) | Attorney for Defendants |
| Attorneys for Plaintiff | Hardy, Lewis & Page, P.C. |
| Serafini, Michalowski, Derkacz & Assoc. | 401 South Old Woodward Avenue |
| 44444 Mound Road | Suite 410 |
| Suite 100 | Birmingham, Michigan 48009 |
| Sterling Heights, Michigan 48314 | Telephone: (248) 645-0800 |
| Telephone: (586) 264-3756 | E-Mail: dmd@hardylewis.com |
| E-Mail: | |

_____/

MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF DEFENDANTS METROPOLITAN LIFE INSURANCE
COMPANY AND THE HAVI GROUP LP HEALTHCARE SURVIVOR
DISABILITY PLAN TO AFFIRM THE ADMINISTRATOR'S DETERMINATION

David M. Davis
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue
Suite 410
Birmingham, Michigan 48009

TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF ISSUES AND CONTROLLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . v

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELEVANT PLAN PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Plaintiff Was Employed by NAVI as Director - Digital Promotions, a
           Sedentary Level Job . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Plaintiff's Claim of LTD Was Initially Denied Because of Her Failure to
           Submit Documentation Supporting Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    On January 2, 2011 Plaintiff Submitted Additional Materials In Support of
           Her Claim for LTD Benefits; 328 Pages Sent by 30 Separate Facsimiles, AR
           514-842 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      D.    Plaintiff, Through Her Counsel, Appealed from the March 21, 2011 MetLife
           Determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      E.    On January 20, 2012, MetLife Upheld the Adverse Determination of
           Plaintiff's Claim of Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      I.    Plaintiff's Claims Against MetLife Arise Exclusively Under ERISA and
           Plaintiff's Complaint Must Be Considered as a Claim for Benefits under
           ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . 13

      II.    The Court's Review is Limited to the Administrative Record . . . . . . . . . . . . . 13

      III.    Defendant's Claim Decision Is Subject to Review Under The Arbitrary And
           Capricious Standard Based On The Evidence Before MetLife When It Made
           The Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      IV.    Because MetLife's Determination is Rational and Required Under Applicable
           Plan Provisions, It is Neither Arbitrary nor Capricious . . . . . . . . . . . . . . . . . . . 15

      V.    It is Proper and Reasonable to Require Objective Evidence of Functional
           Impairment Precluding Sedentary Employment . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

INDEX OF AUTHORITIES

Legal Decisions

Abbott v. Pipefitters Local Union No. 522 Hosp., Medical,
and Life Ben. Plan, 94 F.3d 236 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Baker v. United Mine Workers of Am. Health & Ret. Funds,
929 F.2d 1140 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bishop v. Metropolitan Life Ins. Co.,
70 Fed.Appx. 305, 311; 2003 WL 21659439 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 18

Black & Decker Disability Plan v. Nord,
538 U.S. 822 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Boardman v. Prudential Insurance Co. of America,
337 F.3d 9 (1st Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Boone v. Liberty Life Assur. Co., 161 Fed.Appx. 469,
2005 WL 3479835 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Curry v. Eaton Corp.,
400 Fed.Appx. 51, 2010 WL 3736277 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cusson v. Liberty Life Assur. Co.,
592 F.3d 215 (1st Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Daniel v. Eaton Corp., 839 F.2d 263 (6th Cir.),
cert. denied, 488 U.S. 826 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Davis v. Broadspire Serv., Inc., 2006 WL 752602
(E.D. Mich. March 23, 2006) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Davis v. Kentucky Finance Cos. Retirement Plan,
887 F.2d 689 (6th Cir. 1989), cert. denied, 495 U.S. 905 (1990) . . . . . . . . . . . . . . . . . . . 15

Erickson v. Metropolitan Life Ins. Co.,
39 F. Supp. 2d 864 (E.D. Mich. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fant v. Hartford Life and Accident Ins. Co.,
2010 WL 3324974 (E.D.Mich. August 20, 2010) (copy attached) . . . . . . . . . . . . . . . . . . 20

Firestone Tire & Rubber Co. v. Bruch,
489 U.S. 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fuller v. CBT Corp.,
905 F.2d 1055 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Jackson v. Prudential Ins. Co. of America,
530 F.3d 696 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Killian v. Healthsource Provident Adm'rs,
152 F.3d 514 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

McCandless v. Standard Ins. Co.,
765 F.Supp.2d 943 (E.D.Mich. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

McCulloch v. Metropolitan Life Ins. Co.,
2006 WL 897574 (E.D. Mich. April 6, 2006) (copy attached) . . . . . . . . . . . . . . . . . . . . . . 20, 21

McDonald v. Hartford Life Group Ins. Co., 361 Fed.Appx. 599,
2010 WL 183431 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105,
128 S.Ct. 2343 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Metropolitan Life Ins. Co. v. Taylor,
481 U.S. 58, 107 S. Ct. 1542 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Miller v. Metropolitan Life Ins. Co.,
925 F.2d 979 (6th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

Mossoian v. DaimlerChrysler Co., 2006 WL 3206074
(E.D. Mich. November 3, 2006) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Perry v. Simplicity Engineering,
900 F.2d 963 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Perry v. United Food and Commercial Workers Dist.
Unions 405 and 442, 64 F.3d 238 (6th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Perryman v. Avaya Corp. Long Term Disability Plan,
2007 WL 851607 (E.D.Mich. March 20, 2007) (copy attached) . . . . . . . . . . . . . . . . . . . . . . 20

Pilot Life Ins. Co. v. Dedeaux,
481 U.S. 41 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pokratz v. Jones Dairy Farm,
771 F.2d 206 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pralutsky v. Metropolitan Life Ins. Co.,
435 F.3d 833 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Racknor v. First Allmerica Financial Life Ins. Co.,
71 F.Supp.2d 723 (E.D.Mich. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rose v. Hartford Financial Services Group, Inc., 268 Fed.Appx. 444,
2008 WL 648965 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Speciale v. Blue Cross and Blue Shield Assn.,
538 F.3d 615 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Stano v. Lumberman Mut. Cas. Co., 2007 WL 171601
(E.D. Mich. Jan 18, 2007) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

University Hospital of Cleveland v. Emerson Elec. Co.,
202 F.3d 839 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Weitzenkamp v. Unum Life Ins. Co. Of Amer.,
661 F.3d 323 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Williams v. Aetna Life Ins. Co.,
509 F.3d 317 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wummel v. Metropolitan Life Ins. Co.,
2010 WL 2232431 (E.D.Mich. May 28, 2010)(copy attached) . . . . . . . . . . . . . . . . . . . . . . 21

Yeager v. Reliance Standard Life Ins. Co.,
88 F.3d 376 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


Statutory Authority

ERISA, § 3(1), 29 U.S.C. § 1002(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ERISA, § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


Federal Regulations

20 C.F.R. §416.967 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATEMENT OF ISSUES AND CONTROLLING AUTHORITY

I.      Plaintiff's Claims Against MetLife Arise Exclusively under ERISA and Plaintiff's Complaint Must Be Considered as a Claim for Benefits under ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S. Ct. 1542 (1987)

Miller v. Metropolitan Life Ins. Co., 925 F.2d 979 (6th Cir. 1991)

Ollson v. Darling and Co., 759 F.Supp. 381 (E.D.Mich. 1991)

II.     The Court's Review is Limited to the Administrative Record

Perry v. Simplicity Engineering, 900 F.2d 963 (6th Cir. 1990)

Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376 (6th Cir. 1996)

III.    Because MetLife's Determination Is Supported by Substantial Evidence in the Administrative Record it Is Reasonable and Proper and Should Be Upheld by This Court

Callahan v. Rouge Steel Co., 941 F.2d 456 (6th Cir. 1991)

Kolkowski v. Goodrich Corp., 448 F.3d 843 (6th Cir. 2006)

Williams v. Int'l Paper Co., 227 F.3d 706 (6th Cir. 2000)

IV.     It is Proper and Reasonable to Require Objective Evidence of Functional Impairment Precluding Sedentary Employment.

Bishop v. Metropolitan Life Ins. Co., 70 Fed.Appx. 305, 311; 2003 WL 21659439 (6th Cir. 2003)

Rose v. Hartford Financial Services Group, Inc., 268 Fed.Appx. 444, 2008 WL 648965 (6th Cir. March 11, 2008)

Fant v. Hartford Life and Accident Ins. Co., 2010 WL 3324974 (E.D.Mich. August 20, 2010)(copy attached)

MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF DEFENDANTS METROPOLITAN LIFE INSURANCE
COMPANY AND THE HAVI GROUP LP HEALTHCARE SURVIVOR
<u>DISABILITY PLAN TO AFFIRM THE ADMINISTRATOR'S DETERMINATION</u>

<u>INTRODUCTION</u>

Plaintiff Taylor Hunt ("Plaintiff"), an employee of the HAVI Group ("HAVI"), commenced this litigation against Defendants Metropolitan Life Insurance Company ("MetLife") and the HAVI Group LP HealthCare, Survivor Disability Program ("Plan") on March 20, 2012, by filing her Complaint in this Court. By her Complaint, Plaintiff contests MetLife's adverse determination of her claim of long term disability ("LTD") under the Plan. Plaintiff worked for HAVI as Director of Digital Promotions, a sedentary level job. On January 20, 2012, MetLife issued its final determination under the Plan advising that the medical documentation did not support a severity of impairment to preclude Plaintiff from engaging in sedentary employment on or after December 22, 2009.

As an employee of HAVI, Plaintiff participated in the Plan. Under the Plan, LTD benefits are provided to eligible participants who satisfy the criteria for receipt of such benefits. Under the Plan if a participant insured for LTD benefits establishes that due to sickness or as a direct result of accidental injury she is receiving appropriate care and treatment and complying with requirements of treatment, she is unable to earn during the Elimination Period (180 days) and the next 24 months of sickness or accidental injury, more than 80 % of predisability earnings at her own occupation from any employer in the local economy and, after such period more than 80% of predisability earnings from any employer in the local economy at any gainful occupation for which she is reasonably qualified taking into account training education and experience, she will be entitled to receive LTD benefits.

Claims for LTD benefits under the Plan are administered by MetLife and it has the responsibility for making initial benefit eligibility determinations. Thereafter, a participant may appeal to MetLife for a further review of the claim. Because the Plan is governed by ERISA, Plaintiff's claim for disability benefits arises exclusively under ERISA, and any and all state law

claims are preempted. Further, under the Plan, MetLife, the Claims Administrator, has been delegated discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits. As a result, its determinations are reviewed by this Court under the arbitrary and capricious standard of review.

The Court's review is limited to the Administrative Record, namely the documents and evidence submitted to, and/or considered by MetLife at the time it made its final determination. The Administrative Record was filed with the Court on July 26, 2012.

RELEVANT PLAN PROVISIONS

A copy of the Plan, AR 1-111, is attached as Exhibit A. Under the Plan, LTD benefits are paid as follows:

> If You become Disabled while insured, Proof of Disability Must be sent to Us. When We receive such Proof, We will review the claim. If We approve the claim, We will pay the Monthly Benefit up to the Maximum Benefit Period sown in the SCHEDULE OF BENEFITS, subject to THE DATE BENEFIT PAYMENTS END section.

Exhibit A, AR 79. The Plan defines Proof as follows:

> **Proof** means Written evidence satisfactory to Us that a person has satisfied the conditions and requirements for any benefit described in this certificate. When a claim is made for any benefit described in this certificate, Proof must establish:
> - the nature and extent of the loss or condition;
> - Our obligation to pay the claim; and
> - the claimant's right to receive payment.

Exhibit A, AR 40. Disability is defined as follows:

> Disabled or Disability means that due to Sickness or as a direct result of accidental injury:
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
> - You are unable to earn:
>   - during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
>   - after such period, more than 80% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

Exhibit A, AR 36-37.

The Plan describes the claim procedures at Exhibit A, AR 91-92. Further the Plan delegates discretionary authority to MetLife to interpret Plan provisions and determine eligibility and entitlement to Plan benefits:

> **Discretionary Authority of Plan Administrator**
> **and Other Plan Fiduciaries**
> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

Exhibit A, AR 108

STATEMENT OF FACTS

    A.    Plaintiff Was Employed by NAVI as Director - Digital Promotions, a Sedentary Level Job

Plaintiff last worked for NAVI as Director of Digital Promotions on December 21, 2009. Responsibilities included Project Management, Creative Development and Programming. See the Job Description, AR 918. The job was sedentary, sitting up to 7-8 hours, standing 1-2 hours and walking 3-4 hours per day. No bending, twisting, climbing, reaching above shoulder level, stooping kneeling or lifting was required. See job description submitted as part of the Employer Statement, attached as Exhibit B, AR 963.

    B.    Plaintiff's Claim of LTD Was Initially Denied Because of Her Failure to Submit Documentation Supporting Disability

On May 24, 2010, MetLife received the Employer Statement advising that Plaintiff was applying for LTD benefits. A copy of the Employer Statement and attachments is attached as Exhibit B, AR 962-976. On May 25, 2010, MetLife wrote to Plaintiff enclosing the necessary paperwork for her to complete and return. See AR 933-961. Plaintiff was asked to submit a personal profile, Attending Physician Statements completed by all treating health care providers, copies of office notes from providers from December 2, 2009 to the present (May 25, 2010), and copies of any operative reports during the same period.

- 3 -

On June 24, 2010, Plaintiff submitted the Employee Statement, copy attached as Exhibit C, AR 868-876, and the Attending Physician Statement, copy attached as Exhibit D, AR 877-892. The Employee Statement advised that Plaintiff had completed a B.S. in Accounting, is a Certified Public Accountant, and had training in Marketing. She contended that "pain and fatigue in extreme prevent concentration and ability." AR 869. Plaintiff also indicated that she had received salary continuation / short term disability from her employer during the period from May, 2009 through May, 2010.[1] The Attending Physician Statement dated April 29, 2010, was completed by Dr. Rebecca R. Rumph, a chiropractor. Dr. Rumph stated that she had not advised her patient to cease her occupation, AR 877, and recommended the following restrictions:

1. No lifting over 10 lbs
2. No working in awkward positions
3. No working with arm above shoulder level
4. No forward-bending, twisting or stooping
5. May require periodic breaks
6. No being in one position longer than 30 minutes
7. Having time flexibility - not standard working hours (ie: 9am - 5pm).
8. Patient can work a total of up to 2 hours per day (Patient need flexibility due to fatigue)

Exhibit D, AR 881.

On July 8, 2010, after reviewing the information provided by Plaintiff in support of her claim MetLife advised that no LTD benefits were payable under the terms of the Plan. A copy of the July 8, 2010 MetLife Letter is attached as Exhibit E, AR 863-867. MetLife stated the definition of disability under the Plan and advised that the information / forms that were requested by its May 25, 2010 letter had not been received. MetLife advised that Dr. Rumph had not advised Plaintiff to cease working and that the other evaluations submitted by Dr. Rumph were not sufficient to conclude that Plaintiff was unable to perform the duties of her occupation. MetLife further advised that additional information was needed, including copies of office visit notes and test results from all treating health

---

[1] In this case, MetLife had no involvement or responsibility with respect to disability benefits other than the LTD benefit.

care providers and medical information that support disability from December 22, 2009 to the present. Lastly, MetLife advised Plaintiff of her appeal rights.

      C.     On January 2, 2011 Plaintiff Submitted Additional Materials In Support of Her Claim for LTD Benefits; 328 Pages Sent by 30 Separate Facsimiles, AR 514-842

On January 2, 2011, Plaintiff submitted 328 pages, via 30 separate facsimiles, of additional documentation in support of her claim for LTD benefits. See 514-842. A review of the 328 pages submitted reveals little objective findings supporting disability, but recitations of Plaintiff's subjective complaints. Attached as Exhibit F (AR 518-522, 639-641, 662-663, 757-760, 794-795, 797, 800-801) are several pages of medical reports and test results from Plaintiff's submission. Plaintiff's treating physician, Dr. James Lewerenz, a family practitioner, submitted his statement dated December 29, 2010, advising that Plaintiff suffers from fibromyalgia, adrenal fatigue, gait disturbance, lumbar spondylosis, dysomnia and depression and opined that Plaintiff was disabled, AR 518. The Attending Physician Statement submitted by Dr. Lewerenz, AR 519-522, stated diagnosis of lumbar spondylosis and fibromyalgia with subjective symptoms of gait disturbance and chronic pain. Also submitted was an Attending Physician Statement by Dr. Diane Hallinen, Emergency Medicine, Acupuncture, dated August 26, 2010, AR 639-641, opining that due to fatigue, Plaintiff could only work 2 hours per day. An MRI of the lumbar spine performed on October 28, 2010, AR 662, evidenced a normal examination with minimal spondylosis:

> The vertebral body height and alignment are normal. The disc space height is well preserved. The conus medullaris has a normal position, morphology, and signal intensity. The paraspinal soft tissue structure have an unremarkable appearance. There is no central canal or neuroforaminal narrowing. There is no focal lumbar disc herniation. There is minimal spondylosis of the lower lumbar spine.

Exhibit F, AR 662. On October 28, 2010, an MRI of the brain was performed which resulted in a normal evaluation. See Exhibit F AR 663.

On October 6, 2010, Plaintiff was examined by her physician, Dr. Carla L. Guggenheim, Board Certified in Internal Medicine and Rheumatology. Dr. Guggenheim's report, Exhibit F AR 757-760, despite Plaintiff's complaints of fatigue, nasal congestion, sore throat, dyspnea [shortness

of breath], abdominal pain, back pain, joint pain, cramps, muscle weakness, stiffness, <u>was essentially</u> <u>normal</u>. Nevertheless, based on Plaintiff's complaints she noted the status of existing problems: myalgia [muscle pain] and arthralgia [joint pain].

Previously on September 24, 2009, Plaintiff was examined by her treating physician, Dr. Roy Misirliyan, Internal Medicine, who diagnosed sleep apnea. <u>See</u> AR 794-795. Similarly, a sleep study was performed at St. Mary Mercy Hospital, Livonia, Michigan, the result of which was an impression of obstructive sleep apnea. <u>See</u> Exhibit F AR 800-801. Also included in Plaintiff's submissions was a report of an examination performed on September 24, 2009, AR 797, the results of which were normal except for an abnormal mammogram.

MetLife referred Plaintiff's claim file to Dr. Ephraim K. Brenman, an Independent Physician Consultant ("IPC") Board Certified in Physical Medicine and Rehabilitation with a specialty in Pain Medicine to opine on Plaintiff's functional limitations. Dr. Brenman reviewed the documentation submitted by Plaintiff in support of her claim, issued his report dated March 4, 2011, AR 501-504, attached as Exhibit G. In response to questions posed by MetLife, Dr. Brenman opined that the medical information does not support functional limitations beyond 1/13/11. Exhibit G, AR 502. Dr. Brenman further explained:

> There is no documentation to support any reduction in ability to work full time. The claimant has mainly self-reported complaints. The claimant does have positive laboratory studies, however, there is no documentation of any findings of acute muscle changes as well as swelling, synovitis or joint aches or decreased range of motion or radiculopathy. The MRI scans were basically unremarkable as well as colonoscopy and stress echo. There is a lack of findings of functional examination specifically that would support the claimant's ongoing self reported complaints, particularly the claimant's complaints of low back pain as well as diffuse body pain. There are no findings of auto-inflammatory disease. It was also recommended for the claimant to undergo gentle exercise. In my medical opinion, the claimant would not need any restrictions/limitations at this point in time.

Exhibit G, AR 503.

On February 9, 2011, MetLife, in providing Plaintiff with a full and fair review of her claim, sent a copy of Dr. Brenman's report to Dr. Lewerenz, Plaintiff's treating family practitioner, seeking his comments and requesting clinical information in support of his conclusions. See AR 499.

Dr. Lewerenz responded on March 1, 2011, AR 496, advising that Plaintiff had been totally disabled since December 2, 2009 and providing diagnoses of lumbar spondylolysis [sic], adrenal fatigue, chronic pain, gait disturbance, fibromyalgia, depression and dysomnia. No clinical information was provided by Dr. Lewerenz in support of these diagnoses.

MetLife forwarded Dr. Lewerenz' response to Dr. Brenman seeking his further opinion regarding Plaintiff's functional limitations. Dr. Brenman responded, AR 487-488, copy attached as Exhibit H, advising that his opinion remained the same:

> In my medical opinion, I do not see any documentation that would change my opinion. The medical does not support functional limitations, physical or psychiatric, beyond 3/01/11.
>
> This is a letter that has been submitted by the treating physician and did not show any other documentation of any other functional examination findings or diagnostic testing that would support the claimant having any objective findings to support the subjective complaints at this point in time or to impair the claimant to the point where the claimant would require any restrictions/limitations or preclude the claimant from being able to work full-time.

Exhibit H, AR 488.

On March 21, 2011, MetLife advised Plaintiff that after considering the information submitted in support of her claim and reviewing the Plan provisions, her claim remained denied. A copy of the March 21, 2011 MetLife letter, AR 483-486, is attached as Exhibit I. MetLife's letter stated the criteria for disability under the Plan, advised that all the medical information was reviewed by an IPC and the IPC report had been forwarded to Dr. Lewerenz for his review. After considering all the documentation, the IPC report and the opinion of Dr. Lewerenz, MetLife advised Plaintiff of its adverse determination:

> After reviewing the documentation submitted by Dr. Lewerenz, it is the medical opinion of the IPC that the medical does not support functional limitations, physical or psychiatric. The letter submitted by Dr. Lewerenz did not show documentation of any other functional examination findings or diagnostic testing that would support your having any objective findings that would support the subjective complaints at this point in time or that would impair you to the point where you would have any restrictions/limitations that would preclude you from being able to work fulltime.
>
> In summary there is no medical evidence that would support any functional limitations that would restrict you from returning to work. Therefore your LTD claim has been denied.

Exhibit I, AR 485. MetLife advised Plaintiff of her ability to appeal from this determination.

    D.    Plaintiff, Through Her Counsel, Appealed from the March 21, 2011 MetLife
          Determination

    On April 6, 2011, Plaintiff, through her counsel advised MetLife that Plaintiff planned to

appeal from the March 21, 2011 determination and requested various documents. See AR 480-481.

On April 15, 2011, MetLife responded, enclosing Plaintiff's complete claim file, identifying the

persons involved in reviewing Plaintiff's claim and providing the curriculum vitae of Dr. Brenman.

See AR 478-479.

    On September 16, 2011, Plaintiff, through her counsel, submitted her appeal. In support of

the appeal, Plaintiff attached medical record from her treating physicians and articles regarding

fibromyalgia and a statement from Dr. Lewerenz. See AR 341-461. Attached as Exhibit J is the

September 16, 2011 letter (AR 341-344) and copies of examination and test results (AR. 363-370,

374, 380-383, 395-401, 424-427, 429-430). MRIs of Plaintiff's thoracic spine (AR 363), cervical

spine (AR 364), lumbar spine (AR 365), brain (AR 266) performed in March, 2011, show essentially

normal results. An MRI of Plaintiff's left knee (AR 380) shows minimal spur formation with no

evidence of fracture or dislocation. The March 1, 2011 letter from Dr. Lewerenz (AR 381-382)

opines that Plaintiff is totally disabled, lists several diagnosis, but provides no objective clinical

findings or results from a functional capacity evaluation. The results from a colonoscopy performed

in October, 2009 (AR 383) were normal. On May 25, 2011, Plaintiff underwent a procedure at St.

John Macomb Oakland Hospital to help her sleep apnea (AR 395-396). On October 20, 2009,

Plaintiff underwent an Exercise Stress Echocardiogram (AR 399-401), the results of which were

essentially normal. Dr. Lewerenz submitted an undated statement (AR 429-430) wherein he

described the procedure he uses to diagnose fibromyalgia.[2] The criteria are all subjective:

---

[2]     Dr. Lewerenz, a family practitioner, did not diagnose fibromyalgia using the trigger points.
        In Weitzenkamp v. Unum Life Ins. Co. Of Amer., 661 F.3d 323, 331 (7th Cir. 2011), the
        Court stated: "We have recognized that the trigger test can 'more or less objectively'
                                                                                    (continued...)

1) Widespread pain index (WPI) greater than 7 and symptom severity (SS) scale score greater than 5 or WPI-3-6 and SS scale score greater than 9.
2. Symptoms have been present at a similar level for at least 3 months.
3. The patient does not have a disorder that would otherwise explain the pain.

Exhibit J, AR 429. In summary, no objective clinical findings or other evidence was submitted to support a finding that Plaintiff was unable perform her prior sedentary job.

Plaintiff's appeal letter advised that she was awaiting additional medical records that would be submitted subsequently (AR 344). On October 19, 2011, MetLife wrote to Plaintiff's counsel (AR 337) confirming a telephone conversation during which Plaintiff's counsel advised that no additional information would be submitted in support of Plaintiff's appeal.

MetLife referred Plaintiff's claim file to Dr. Jane T. St. Clair, an IPC, Board Certified in Occupational Medicine, Anesthesiology and a member of the American Academy of Disability Evaluating Physicians, to opine regarding Plaintiff's ability to engage in employment. Dr. St. Clair issued her report dated November 11, 2011, AR326-331, copy attached as Exhibit K. Dr. St. Clair's report listed all the documents that were reviewed, recounted her efforts in contacting Plaintiff's treating physicians, provided a summary of Plaintiff's history and responded to questions posed by MetLife. Dr. St. Clair did speak with Dr. Diane Hallinen, one of Plaintiff's treating physicians - acupuncture, who opined that Plaintiff had a variant of the usual fibromyalgia, walks slowly, doubted the diagnosis of mixed connective tissue disease and commented on Plaintiff's reluctance to seek psychological help:

Ms. Hunt tries to control which treatment she is willing to work with. She has been reaching out to chiropractors and other providers but has been reluctant to seek psychological help even when suggested by other professionals. Dr. Hallinen (an ER physician) believes she is

_____

[2](...continued)
establish the disease where the findings of the test are consistent with fibromyalgia. *Hawkins v. First Union Corp. Long–Term Disability Plan,* 326 F.3d 914, 919 (7th Cir.2003). *Chronister v. Baptist Health,* 442 F.3d 648, 656 (8th Cir.2006), held that the claimant's fibromyalgia was not within the self-reported symptoms limitation in light of that court's having already accepted that the trigger test 'qualifies as a clinical examination standardly accepted in the practice of medicine.'"

depressed, but she will not look for the appropriate health provider. She believes there is an underlying psychological reason that keeps her from following the suggestions of her doctors and going in her own direction. She does not think Ms. Hunt has much anxiety, but she has refused to look at the mind component in mind-body medicine.

Exhibit K, AR 328. Dr. Irene C. Metro, Internal Medicine and Fibromyalgia, another of Plaintiff's treating physicians, advised that she had not seen her patient since March, 2011. Dr. Diana Quinn, spoke with Dr. St. Clair and advised that she practices naturopathic medicine and by state law is not allowed to do physical exams or make diagnosis. Dr. Rumph, Plaintiff's chiropractor, advised that she was unable to make comments on her medically because she can only comment within the scope of her practice. Dr. Guggenheim advised that although her patient does have a positive ANA[3], positive rheumatoid factor[4] and a positive HLA-B27,[5] there are no findings on examination to support an impairment. Dr. Lewerenz' office advised that he would not speak with Dr. St. Clair unless he received $95. See Exhibit K, AR 327-329.

Dr. St. Clair opined that the medical information submitted did not support functional limitations continuously from 12/22/09 through the present time that would preclude Ms. Hunt from engaging in full-time sedentary employment. Dr. St. Clair further explained:

> Ms. Hunt has largely self-reported subjective complaints of pain. Dr. Guggenheim has examined her most recently and described her condition as myalgias and arthralgias. During the interview she stated that she could not find exam findings that would support her inability to function in the work place. She confirmed the lack of synovitis, swelling, painful inflamed joints and decreased range of motion. Dr. Guggenheim (10/6/10) states that she has trouble with the following activities of daily living (ADL's): tying shoes; getting in and out of bed; bending down to pick up clothing; lifting a full cup or glass to her mouth; taking a tub bath; going up and down stairs. . . .

---

[3]    In most cases, a positive ANA test indicates that your immune system has launched a misdirected attack on your own tissue — in other words, an autoimmune reaction. But some people have positive ANA tests even when they're healthy.

[4]    Rheumatoid factor can sometimes be present in normal individuals without diseases. This occurs more frequently in people with family members who have rheumatoid arthritis.

[5]    Most people who have ankylosing spondylitis have the HLA-B27 gene. But many people who have this gene never develop ankylosing spondylitis.

- 10 -

>Her imaging studies are normal or do not support significant findings to explain her pain complaints. The MRI of the Thoracic Spine shows a small disc herniation and osteophyte at T6-7 on the left, which mildly effaces the cord. The cervical MRI showed mild to moderate degenerative changes and no spinal stenosis. The Lumbar MRI showed minimal spondylosis with no evidence of focal disc herniation or canal narrowing. The MRI of the Brain is normal. She had a negative stress echocardiogram (10/20/09). . . .

>The medical records do not have objective findings that support her claims that she is unable to work.

Exhibit K, AR 330. Dr. St. Clair commented that although the medical records do not support medical restrictions, according to the description given by many of her providers Ms. Hunt does not ambulate well. Because of this repeated observation, Dr. St. Clair opined that Ms. Hunt may not be able to perform in a job where the walking demand is greater than 2 hours in a 8 hour day. Dr. St. Clair further explained that there is no clear diagnosis that explains her poor ambulation and loss of ambulatory skills is not typical in a fibromyalgia patient. See Exhibit K, AR 330.

On November 18, 2011, MetLife wrote to Plaintiff's counsel, AR 318, advising that Plaintiff's entire claim file had been referred to an IPC and the resulting IPC report had been forwarded to Plaintiff's treating doctors: Dr. Hallinen, Dr. Quinn, Dr. Metro, Dr. Butero, Dr. Rumph, Dr. Lewerenz and Dr. Gugganheim with a request that they review and comment on the report within 14 days.[6] MetLife further advised that if additional time was needed, a brief explanation for the extension should be submitted. Although Dr. Lewerenz requested additional time to respond (AR 246), which was granted by MetLife (AR 252), he did not submit any further documentation (AR 224). Only Dr. Rosanne Butera, Plaintiff's chiropractor, submitted additional documentation. See AR 239-243. Dr. Butera erroneously stated that conditions of fibromyalgia, chronic fatigue syndrome, lupus and rheumatoid arthritis have already been established through blood tests . . ." See AR 240. She also stated that she had not seen her patient since February 19, 2010.

---

[6]     Letters from MetLife to Plaintiff's treating doctors / providers enclosing the St. Clair report appear at AR 257, 266, 275, 284, 293, 302 and 311.

E.     On January 20, 2012, MetLife Upheld the Adverse Determination of Plaintiff's Claim of Disability

On January 20, 2012, MetLife advised Plaintiff's counsel, that after a full and fair review of Plaintiff's claim file, including Plaintiff's subjective complaints, the opinions of her treating providers and the IPC reports, it determined that under the Plan its adverse determination must be upheld. A copy of this January 20, 2012 letter, AR 232-237, is attached as Exhibit L. MetLife stated the Plan's definition of disability and explained that the determination of disability was not solely based on diagnoses, but on Plaintiff's functional capabilities related to her symptoms reported and substantiated by her health care providers. MetLife explained that her prior job of Director, Digital Promotions is considered a sedentary job with responsibilities that include project management, creative development, and programming. The MetLife letter advised that Plaintiff's claim file had been reviewed by an IPC and recounted the conversations between the IPC and Plaintiff's treating providers. MetLife summarized the opinion of the IPC:

> Given the totality of the medical records, the IPC reviewer opined the records available for review did not document objective findings that support Ms. Hunt's inability to work. However, the IPC reviewer also stated that although the medical information did not support medical restrictions, according to the description given by many of her providers and because of the repeated observations, the IPC opined that she believed Ms Hunt would not be able to perform in a job where the walking demand was greater than 2 hours in a 8 hour day. The March 1, 2011 letter from Dr. Lewerenz provided written confirmation of a poor ambulatory gait and the use of a cane; however he did not back up his opinion with medical documentation and there was no clear diagnosis that explained her poor ambulation and loss of ambulatory skills were not typical in a fibromyalgia patients.

Exhibit L, AR 236. In upholding the denial of Plaintiff's claim, MetLife explained:

> Based on our review of all of the information provided in Ms. Hunt's file, we have determined there was a lack of medical evidence showing a severity in an impairment whether singular or in combination to support restrictions and limitations for the time period of December 22, 2009 continuously through the present.

> . . . Based on the available medical information for review, and the report from the Independent Physician Consultant, we were unable to conclude that she was unable to perform her job as a director, digital promotions as stated in her employer's plan for the entire time period under review. Since there were [sic] no evidence substantiating a severity in impairment(s) that she was unable to perform her job from the time period of December 2, 2009 continuously through the present time she did not meet the Definition of Disability. Therefore, we find that her benefits will remain denied.

Exhibit L, AR 237.

In summary, the Administrative Record provides insufficient clinical or objective findings that would support functional limitations precluding the Plaintiff from engaging in sedentary employment on or after December 22, 2009.

LEGAL ARGUMENT

    I.      Plaintiff's Claims Against MetLife Arise Exclusively Under ERISA and Plaintiff's Complaint Must Be Considered as a Claim for Benefits under ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

The Plan is an employee welfare benefit plan as defined under section 3(1) of ERISA. 29 U.S.C. § 1002(1). Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), provides that participants in employee benefit plans may bring civil actions to recover benefits allegedly due to them under the terms of their plan. See Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 980 (6th Cir. 1991). Thus, Plaintiff's claim against MetLife for LTD benefits under the Plan arises exclusively under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and any state law claims against MetLife are preempted and should be summarily dismissed. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63, 107 S. Ct. 1542 (1987); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41,45 (1987) (ERISA preemption), Miller, supra at 982, (ERISA preempts state law claims for ERISA-regulated plan benefits).

    II.     The Court's Review is Limited to the Administrative Record

A court's review of the decision of a plan fiduciary is limited to the administrative record, i.e., the information presented to and considered by the plan fiduciary. Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir. 1990)(Courts should not "function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.") See also Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996)(Courts "are

required to consider only the facts known to the plan administrator at the time he made his decision"); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir.1991) ("It is true that when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made"). Thus, the Court's review is limited to the Administrative Record.

III.    Defendant's Claim Decision Is Subject to Review Under The Arbitrary And Capricious Standard Based On The Evidence Before MetLife When It Made The Decision

"[A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In Bruch, the Supreme Court reasoned that general principles of trust law should govern the choice of the standard of review. Because a trustee's discharge of its duties under a trust agreement is accorded deferential treatment only when the instrument grants the trustee discretion, the Court concluded that deference to an administrator's decision is appropriate when discretion is delegated to the decision maker. See id. at 108-115. In Metropolitan Life Ins. Co. v. Glenn, 554 U.S.105, 115; 128 S.Ct. 2343, 2350 (2008), the Court, addressing an ERISA disability claim with an inherent conflict of interest, reaffirmed its holding in Firestone:

> We do not believe that *Firestone's* statement implies a change in the *standard* of review, say, from deferential to *de novo* review. Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion.

Based on the above and the Plan's explicit delegation of discretionary authority to MetLife, Exhibit A, AR 108 (". . .discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits . . ."), there can be no dispute that the arbitrary and capricious standard of review applies to MetLife's determination regarding the LTD benefits in this

- 14 -

case. In other words, MetLife's determination that under the Plan, Plaintiff was not eligible for LTD benefits because the documentation in the Administrative Record does not support functional limitations that would preclude Plaintiff from engaging in sedentary employment is neither arbitrary nor capricious and should be upheld by this Court.

IV.    Because MetLife's Determination is Rational and Required Under Applicable Plan Provisions, It is Neither Arbitrary nor Capricious

Courts have provided guidance in determining whether an administrator's decision is arbitrary and capricious, for instance, in Daniel v. Eaton Corp., 839 F.2d 263 (6th Cir.), cert. denied, 488 U.S. 826 (1988), this Court explained:

> Each application for benefits implicates the rights of other members of a plan, and the plan administrator views each case from this perspective. By upholding the decisions of an administrator that are rational in light of the plan's provisions and thus not arbitrary or capricious, the courts contribute to consistency and fairness in plan administration. (emphasis added)

839 F.2d at 267. See also Perry v. United Food and Commercial Workers Dist. Unions 405 and 442, 64 F.3d 238, 242 (6th Cir.1995) (citing Miller supra at 984); Abbott v. Pipefitters Local Union No. 522 Hosp., Medical, and Life Ben. Plan, 94 F.3d 236, 240 (6th Cir. 1996); Miller, 925 F.2d at 984.

"'[T]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action' and '[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious,'" Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989), cert. denied, 495 U.S. 905 (1990), (quoting Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1985)). Thus, a court can overturn the administrator's determination "only by finding that they abused their discretion--which is to say, that they were not just clearly incorrect but downright unreasonable." Fuller v. CBT Corp., 905 F.2d 1055, 1058 (7th Cir. 1990). See also University Hospital of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 846 (6th Cir. 2000).

Similarly in Racknor v. First Allmerica Financial Life Ins. Co., 71 F.Supp.2d 723 (E.D.Mich. 1999), the Court explained the application of the arbitrary and capricious standard:

- 15 -

Under the arbitrary and capricious standard, the administrator's claim can be overturned only upon a showing of internal inconsistency, bad faith, or some similar ground. See *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 695 (6th Cir.1989). If the plan administrator's decision is rational in light of the plan's provisions and reasonable with no abuse of discretion, then it must be upheld. See *Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979, 984 (6th Cir.1991); *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988); *Eriksen v. Metropolitan Life Insurance Co.*, 39 F.Supp.2d 864, 870 (E.D.Mich.1999).

71 F.Supp. at 729.

Under the arbitrary and capricious standard of review, MetLife's decision should be upheld if it is "the result of a deliberate principled reasoning process" and is "supported by substantial evidence." Killian v. Healthsource Provident Adm'rs, 152 F.3d 514, 520 (6th Cir. 1998)(quoting, Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991)). "It is only if the court is confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence that it may conclude that a decision was arbitrary and capricious." Erickson v. Metropolitan Life Ins. Co., 39 F. Supp. 2d 864, 870 (E.D. Mich. 1999).

This Court should uphold MetLife's determination that Plaintiff is not eligible for LTD benefits under the Plan because it is supported by substantial documentation in the Administrative Record evidencing that there are insufficient functional limitations that would preclude Plaintiff from engaging in sedentary level employment.

Dr. Brenman, an IPC Board Certified in Physical Medicine and Rehabilitation, opined that there were no significant functional limitations precluding Plaintiff from engaging in sedentary employment:

> There is no documentation to support any reduction in ability to work full time. The claimant has mainly self-reported complaints. The claimant does have positive laboratory studies, however, there is no documentation of any findings of acute muscle changes as well as swelling, synovitis or joint aches or decreased range of motion or radiculopathy. The MRI scans were basically unremarkable as well as colonoscopy and stress echo. There is a lack of findings of functional examination specifically that would support the claimant's ongoing self reported complaints, particularly the claimant's complains of low back pain as well as diffuse body pain. There are no findings of auto-inflammatory disease.

- 16 -

Exhibit G, AR 503. Similarly, Dr. St. Clair, Board Certified in Occupational Medicine and Anesthesiology, after reviewing the entire claim file and consulting with Plaintiff's treating providers found no substantial objective evidence that would preclude sedentary employment:

> Her (Hunt's) imaging studies are normal or do not support significant findings to explain her pain complaints. The MRI of the Thoracic Spine shows a small disc herniation and osteophyte at T6-7 on the left, which mildly effaces the cord. The cervical MRI showed mild to moderate degenerative changes and no spinal stenosis. The Lumbar MRI showed minimal spondylosis with no evidence of focal disc herniation or canal narrowing. The MRI of the Brain is normal. She had a negative stress echocardiogram (10/20/09)

Exhibit K, AR 330.

Dr. Guggenheim, one of Plaintiff's treating physicians, Board Certified in Internal Medicine and Rheumatology, conducted an examination of Plaintiff on October 6, 2010, which was essentially normal, despite Plaintiff's numerous complaints of fatigue, nasal congestion, sore throat, dyspnea, abdominal pain, back pain, joint pain, cramps, muscle weakness, stiffness. Dr. Hallinen, another of Plaintiff's treating physicians, opined that Plaintiff had a variant of the usual fibromyalgia, walks slowly, doubted the diagnosis of mixed connective tissue disease and commented on Plaintiff's reluctance to seek psychological help. Exhibit K, AR 328.

Department of Labor regulations define sedentary work at 20 C.F.R. §416.967 as follows:

> Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Plaintiff's prior position of Director - Digital Promotions fits within the definition of sedentary employment.

Here Plaintiff received a full and fair review of her claim and MetLife's adverse determination of her claim of disability under the Plan was neither arbitrary nor capricious and should be upheld by this Court.

V.      It is Proper and Reasonable to Require Objective Evidence of Functional Impairment Precluding Sedentary Employment

As the claim administrator, MetLife's fiduciary obligations extend to the Plan and to all participants and beneficiaries. 29 U.S.C. § 1104. It is reasonable, therefore for MetLife to require objective evidence to support Plaintiff's subjective claims that she cannot perform the material duties of her own occupation as Director - Digital Promotions. Although Plaintiff asserts numerous subjective complaints of fatigue, nasal congestion, sore throat, dyspnea, abdominal pain, back pain, joint pain, cramps, muscle weakness, stiffness, neither her treating providers nor the Administrative Record identifies a diagnosis supporting functional limitations precluding Plaintiff from engaging in sedentary employment.

In Bishop v. Metropolitan Life Ins. Co., 70 Fed.Appx. 305, 311; 2003 WL 21659439 (6th Cir. 2003), the Court upheld the Administrator's determination denying disability benefits under an ERISA-regulated plan when there was no firm diagnosis or explanation for the cause of the plaintiff's subjective reports of pain:

> In the wake of this development [the Supreme Court's decision in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965 (2003)], we are unable to say that Met Life's denial of Bishop's long-term disability claim based on physical disability was arbitrary and capricious. We base this conclusion on the highly deferential nature of our review, the fact that Bishop's medical records did not contain objective evidence pinpointing a cause of her disability, and the hesitance of Bishop's own doctors in reaching a firm diagnosis or explanation for the cause of her subjective reports of pain.

70 Fed.Appx. at 311 (emphasis added). In Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003), the Supreme Court held that claims administrators are not required to accord special weight to opinions of treating physicians.

Similarly, in Rose v. Hartford Financial Services Group, Inc., 268 Fed.Appx. 444, 2008 WL 648965 (6th Cir. March 11, 2008), the administrator terminated plaintiff's LTD claim based, in part, on the lack of objective evidence in the administrative record to support her contention that she was unable to engage in sedentary employment. In affirming the District Court's judgment that the denial

of benefits was neither arbitrary nor capricious, the Court explained that it is reasonable for the insurer to request objective evidence to support the claim of functional impairment:

> However, the case law of this court, to which this panel must adhere, suggests that it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity. This court has held that "[r]equiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable." *Cooper,* 486 F.3d at 166 (citing *Spangler v. Lockheed Martin Energy Sys., Inc.,* 313 F.3d 356, 361 (6th Cir.2002)). . . . *see also Oody v. Kimberly-Clark Corp. Pension Plan,* 215 Fed.Appx. 447, 452 (6th Cir.2007) (holding that denial of disability benefits was not arbitrary and capricious where claimant "failed to submit sufficient objective evidence to establish he was permanently and totally disabled, as defined by the Plan"); *Nichols v. Unum Life Ins. Co. of Am.,* 192 Fed.Appx. 498, 504 (6th Cir.2006) (determining that insurer was not unreasonable in concluding that treating physician's assessment was largely based on her acceptance of [the claimant's] descriptions of her medical conditions, rather than based on an objective assessment of [the claimant's] medical history").

268 Fed.Appx. At 453-454, 2008 WL 648965**9 (emphasis added). See also Curry v. Eaton Corp., 400 Fed.Appx. 51, 59; 2010 WL 3736277 (6th Cir. 2010) ("Though ERISA and federal regulations under the Act "require 'full and fair' assessment of claims and clear communication to the claimant of the 'specific reasons' for benefit denials [,] ... these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition." *Ibid.* (citing 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1 (2002)). To that extent, a lack of objective medical evidence upon which to base a treating physician's opinion has been held sufficient reason for an administrator's choice not to credit that opinion.

In McCandless v. Standard Ins. Co., 765 F.Supp.2d 943 (E.D.Mich. 2011), this Court affirmed the administrator's determination denying disability benefits because the administrative record lacked objective evidence supporting plaintiff's complaints:

> While it is probable that [Plaintiff] has been symptomatic from her AS [ankylosing spondylitis] for a long time, these records do not support that this is significantly physically limiting from a full-time sedentary occupation from February 2005 through July 2007, particularly since there are no physical exams, speciality evaluations, nor actual observations of functional limitations. (February 2008, 0413).

> Ultimately, the reviewing consultants concluded that though Plaintiff's file contained multiple reports of pain, objective medical evidence did not support those subjective complaints. Also, Defendant's seven page letter sent to Plaintiff clearly explains the specific

> reasoning behind its decision to deny her claim. (0126–133). Defendant's explanations were clearly reasonable given the AR [administrative record].

765 F.Supp.2d at 955. Similarly in Fant v. Hartford Life and Accident Ins. Co., 2010 WL 3324974

(E.D.Mich. August 20, 2010)(copy attached), this Court confirmed that it is reasonable for an insurer

to request objective evidence of a claimant's functional capacity:

> The Sixth Circuit held it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity. *Cooper,* 486 F.3d at 166 (citing *Spangler v. Lockheed Martin Energy Sys., Inc.,* 313 F.3d 356, 361 (6th Cir.2002)).

2010 WL 3324974*9. In Perryman v. Avaya Corp. Long Term Disability Plan, 2007 WL 851607

(E.D.Mich. March 20, 2007) (copy attached), this Court explained that it was reasonable for an

administrator to deny disability benefits under an ERISA plan where there is a lack of objective

evidence to support the disability claim:

> Numerous courts hold that an administrator's decision to deny benefits is reasonable and rational in the absence of objective medical evidence to substantiate the claim of disability. *Davis v. Broadspire Serv., Inc.,* No. 04-74792, 2006 WL 752602 (E.D.Mich. March 23, 2006) (plan administrators decision to deny benefits was rational when none of the plaintiff's treating physicians provided objective medical evidence to support their disability diagnosis); *see also Mossoian v. DaimlerChrysler Co.,* No. 06-11272, 2006 WL 3206074 (E.D.Mich. November 3, 2006); *Stano v. Lumberman Mut. Cas. Co.,* No. 06-10842, 2007 WL 171601 (E.D.Mich. Jan 18, 2007).

2007 WL 851607*4.

> In McCulloch v. Metropolitan Life Ins. Co., 2006 WL 897574 (E.D. Mich. April 6, 2006)

(copy attached), this Court affirmed the denial of long term disability benefits because plaintiff had

not submitted evidence of functional limitations precluding sedentary employment:

> In this case, the defendant concluded that the plaintiff failed to establish that she was disabled within the meaning of the plan. Certainly, there is evidence that the plaintiff suffered from low back pain, underwent surgery in 1997, had an MRI that revealed degenerative disc disease, and had permanent work restrictions. *See, e.g.,* AR at 101, 123, 125. However, the plaintiff's burden is to prove she is disabled within the meaning of the plan. Disability is not framed in terms of what the plaintiff does or does not suffer from. The plaintiff has presented no evidence of how her ailments impacted her ability to work and earn.

2006 WL 897574 at *12 (emphasis added). Again in Wummel v. Metropolitan Life Ins. Co., 2010

WL 2232431 (E.D.Mich. May 28, 2010)(copy attached), this Court again confirmed that a claims

administrator could require objective clinical findings to support functional limitations:

> However, the case law of this court, to which this panel must adhere, suggests that it is
> entirely reasonable for an insurer to request objective evidence of a claimant's functional
> capacity. This court has held that "[r]equiring a claimant to provide objective medical
> evidence of disability is not irrational or unreasonable." *Cooper,* 486 F.3d at 166 (citing
> *Spangler v. Lockheed Martin Energy Sys., Inc.,* 313 F.3d 356, 361 (6th Cir.2002)). In
> *Cooper,* the court noted that objective medical evidence of the functional capacity of the
> claimant, who had a lower back injury, would have assisted the insurer in determining
> whether the claimant was capable of performing the duties of her occupation, as was required
> by her policy. *Id.; see also Oody v. Kimberly-Clark Corp. Pension Plan,* 215 Fed.Appx. 447,
> 452 (6th Cir.2007) (holding that denial of disability benefits was not arbitrary and capricious
> where claimant "failed to submit sufficient objective evidence to establish he was
> permanently and totally disabled, as defined by the Plan"); *Nichols v. Unum Life Ins. Co. of
> Am.,* 192 Fed. Appx. 498, 504 (6th Cir.2006) (determining that insurer was not unreasonable
> in concluding that treating physician's assessment was "largely based on her acceptance of
> [the claimant's] descriptions of her medical conditions, rather than based on an objective
> assessment of [the claimant's] medical history").

2010 WL 2232431*13. See also Boone v. Liberty Life Assur. Co., 161 Fed.Appx. 469, 474; 2005

WL 3479835 **6 (6th Cir. 2005)(it was not arbitrary or capricious for the defendant to terminate

benefits in the absence of objective evidence of a functional impairment); Davis v. Broadspire Serv.,

Inc., 2006 WL 752602 (E.D. Mich. March 23, 2006) (copy attached) (plan administrator's decision

to deny benefits was rational); Mossoian v. DaimlerChrysler Co., 2006 WL 3206074 (E.D. Mich.

November 3, 2006) (copy attached); Stano v. Lumberman Mut. Cas. Co., 2007 WL 171601(E.D.

Mich. January 18, 2007) (copy attached) (both to the same effect).

Other circuit courts have also required objective proof of functional impairment. In Cusson

v. Liberty Life Assur. Co., 592 F.3d 215 (1st Cir. 2010), the plaintiff contested the denial of long

term disability benefits based on complaints of pain and fatigue she said that she experienced after

chemotherapy. The First Circuit affirmed summary judgment in favor of the claim administrator,

stating that it was neither arbitrary nor capricious for the claim administrator to require objective

evidence of functional impairment. See also McDonald v. Hartford Life Group Ins. Co., 361

Fed.Appx. 599, 2010 WL 183431 (5th Cir. 2010) (the Court upheld the denial of disability benefits

when no medical evidence supported subjective complaints of pain); <u>Speciale v. Blue Cross and Blue Shield Assn.</u>, 538 F.3d 615 (7th Cir. 2008); <u>Williams v. Aetna Life Ins. Co.</u>, 509 F.3d 317, 322 (7th Cir. 2007) (it is reasonable for a claim administrator to require evidence of functional limitations that can be objectively measured even when the amount of fatigue or pain a person says he or she experiences cannot); <u>Boardman v. Prudential Insurance Co. of America</u>, 337 F.3d 9, 16 n. 5 (1st Cir.2003); <u>Pralutsky v. Metropolitan Life Ins. Co.</u>, 435 F.3d 833 (8th Cir. 2006) (holding it was not unreasonable for a plan to request objective evidence of functional impairment concerning a claimant diagnosed with fibromyalgia in addition to the statements of her doctor reciting the claimant's subjective complaints of pain and fatigue); <u>Jackson v. Prudential Ins. Co. of America</u>, 530 F.3d 696 (8th Cir. 2009) (Court upheld the denial of disability benefits because defendant's determination that administrative record lacked objective evidence of cognitive impairment was neither arbitrary nor capricious).

In this case, MetLife provided Plaintiff with a full and fair review of her claim. It considered numerous medical records submitted by Plaintiff and the file was reviewed by two independent physician consultants. None of these physicians or treaters could provide objective clinical findings to support functional limitations that precluded Plaintiff from engaging in her own occupation. In these circumstances it was neither arbitrary nor capricious for MetLife to determine that under the Plan, Plaintiff was not eligible for LTD benefits.

<u>CONCLUSION</u>

Based on the above, Defendants respectfully request that this Court affirm the determination of MetLife, the Claims Administrator, and confirm that under the terms of the Plan, LTD benefits

are not payable, and that the MetLife determination is neither arbitrary nor capricious. Defendants further request that they be allowed to recover their attorney fees reasonably incurred in defending this action.

<div style="margin-left:40%">

Respectfully submitted,

s/David M. Davis
David M. Davis (P24006)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue
Suite 410
Birmingham, Michigan 48009

</div>

Date: November 1, 2012

<div style="text-align:center">

CERTIFICATE OF SERVICE

</div>

I hereby certify that on November 1, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to Patrick Derkacz, and Kevin J. Peters, Attorneys for Plaintiff, Serafini, Michalowski, Derkacz & Assoc., 44444 Mound Road, Suite 100, Sterling Heights, MI 48314.

<div style="margin-left:40%">

/s/David M. Davis
David M. Davis (P24006)
Attorney for Defendants
401 S. Old Woodward Ave., Ste. 410
Birmingham, MI 48009
Telephone: (248) 645-0800
E-Mail: dmd@hardylewis.com

</div>

Dated: November 1, 2012

00235362.WPD