UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAYLOR HUNT,

       Plaintiff,                                   Case No. 12-cv-11231
                                                   HON. GERSHWIN A. DRAIN
v.

METROPOLITAN LIFE INSURANCE
COMPANY, *et al.*,

       Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO AFFIRM THE
ADMINISTRATOR'S DECISION [#22], DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [#25], STRIKING SUPPLEMENTAL BRIEF [#35]AND
DISMISSING ACTION**

## I.  INTRODUCTION

On March 20, 2012, Plaintiff, Taylor Hunt, filed the instant action claiming that Defendants, Metropolitan Life Insurance Company ("MetLife") and the HAVI Group LP Survivor Disability Plan ("Plan"), breached the terms of an employee benefit plan by denying her claim for long term disability ("LTD") benefits in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. Presently before the Court are the following motions, both filed on November 1, 2012: (1) Plaintiff's Motion for Summary Judgment and (2) Defendants' Motion to Affirm the Administrator's Determination. The parties' motions are fully briefed and a

hearing was held on March 21, 2013.[1] For the reasons that follow, the Court grants Defendants' Motion to Affirm the Administrator's Determination and denies Plaintiff's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

Plaintiff worked for the HAVI GROUP as the Director of Digital Promotions until December 21, 2009 following an accident in March of 2009 when Plaintiff fell at home and injured her back. As a Director of Digital Promotions, Plaintiff's job responsibilities included project management, creative development and programming. Plaintiff's position qualifies as "sedentary" under the Department of Labor's regulations. *See* 20 C.F.R. § 416.967.

As an employee of HAVI GROUP, Plaintiff participated in the Plan. Under the Plan, LTD benefits are provided to eligible participants who satisfy the criteria for receipt of such benefits. Specifically, the Plan states:

> If You become Disabled while insured, Proof of Disability Must be sent to Us. When We receive such Proof, We will review the claim. If We approve the claim, We will pay the Monthly Benefit up to the Maximum Benefit Period shown in the SCHEDULE OF BENEFITS, subject to THE DATE BENEFIT PAYMENTS END section.
>
>     \*                \*                \*
>
> Proof means Written evidence satisfactory to Us that a person has satisfied the conditions and requirements for any benefit described in this certificate. When a claim is made for any benefit described in this certificate, Proof must establish:

---

[1] After the hearing, Defendants submitted a supplemental brief directing the Court to recent Sixth Circuit authority, specifically *Judge v. Metropolitan Life Insurance Co.*, case number, 12-1092 (March 25, 2013). However, the Court declines to consider this authority and the supplemental brief because Plaintiff was denied the opportunity to respond to the new authority or supplemental brief as both were filed after the conclusion of briefing on the parties' cross motions for summary judgment and the Court's hearing. Accordingly, the Court strikes Defendants' Supplemental Brief [#35].

- the nature and extent of the loss or condition;
- our obligation to pay the claim; and
- the claimant's right to receive payment.

       \*       \*       \*

Disabled or Disability means that due to Sickness or as a direct result of accidental injury:
- You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
- You are unable to earn:
  - during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
  - after such period, more than 80% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

AR 36-37, 40, 79.

On May 24, 2010, Plaintiff applied for LTD benefits with MetLife. On June 24, 2010, Plaintiff submitted the paperwork MetLife requested. Plaintiff's paperwork included a statement from Dr. Rebecca Rumph, a Chiropractor. Dr. Rumph stated "I am optimistic that Ms. Hunt can perform her job duties from home. There are some restrictions, but being at home verse [sic] the office setting I believe can be accomplished." Dr. Rumph recommended the following work restrictions:

1. No lifting over 10 lbs
2. No working in awkward positions
3. No working with arm above shoulder level
4. No forward-bending, twisting or stooping
5. May require periodic breaks
6. No being in one position longer than 30 minutes
7. Having time flexibility - not standard working hours (ie: 9am - 5pm).
8. Patient can work a total of up to 2 hours per day (Patient need

      flexibility due to fatigue)
A.R. 881.

  On July 8, 2010, MetLife denied Plaintiff's claim. MetLife concluded that the materials submitted by Dr. Rumph and Plaintiff's statement did not demonstrate Plaintiff was unable to perform the duties of her occupation. MetLife further advised that additional documentation was required, including copies of office visit notes, test results from all treating health care providers and medical information to support disability from December 22, 2009.

  On January 2, 2011, Plaintiff submitted 328 pages of additional documentation supporting her claim for LTD benefits. Dr. James Lewerenz submitted his statement dated December 29, 2010, advising that Plaintiff suffers from fibromyalgia, adrenal fatigue, gait disturbance, lumbar spondylosis, dysomnia and depression. He further opined that Plaintiff was unable to work. Dr. Diane Hallinen opined that due to fatigue, Plaintiff could only work 2 hours per day. On October 6, 2010, Plaintiff was examined by her physician, Dr. Carla L. Guggenheim, Board Certified in Internal Medicine and Rheumatology. Dr. Guggenheim stated in her report that she had advised her patient to return to work "as her pain and fatigue allows" and that she "suspect[ed] Ms. Hunt's pain will improve eventually." An October 28, 2010, MRI evidenced minimal spondylosis of the lower lumbar spine but was otherwise normal. Additionally, an MRI of the brain was performed which resulted in a normal evaluation.

  MetLife referred Plaintiff's claim to Dr. Ephraim Brenman, an Independent Physician Consultant ("IPC"); Board Certified in Physical Medicine and Rehabilitation. Dr. Brenman's March 4, 2011 report states in relevant part:

> There is no documentation to support any reduction in ability to work full time. The claimant has mainly self-reported complaints. The claimant does have positive laboratory studies, however, there is no

> documentation of any findings of acute muscle changes as well as swelling, synovitis or joint aches or decreased range of motion or radiculopathy. The MRI scans were basically unremarkable as well as colonoscopy and stress echo. There is a lack of findings of functional examination specifically that would support the claimant's ongoing self reported complaints, particularly the claimant's complaints of low back pain as well as diffuse body pain. There are no findings of auto-inflammatory disease. It was also recommended for the claimant to undergo gentle exercise. In my medical opinion, the claimant would not need restrictions/limitations at this point in time.

On February 9, 2011, MetLife sent a copy of Dr. Brenman's report to Dr. Lewerenz seeking his comments and requesting clinical information in support of his conclusions. Dr. Lewerenz responded on March 1, 2011, advising that Plaintiff had been totally disabled since December 2, 2009, and provided diagnoses of lumbar spondylolsis [sic], adrenal fatigue, chronic pain, gait disturbance, fibromyalgia, depression and dysomnia. However, Dr. Lewerenz did not provide clinical information to support these diagnoses. Thereafter, MetLife forwarded Dr. Lewerenz's response to Dr. Brenman seeking further opinion. Dr. Brenman responded that his opinion remained the same:

> In my medical opinion, I do not see any documentation that would change my opinion. The medical does not support functional limitations, physical or psychiatric, beyond 3/01/11.
>
> This is a letter that has been submitted by the treating physician and did not show any other documentation of any other functional examination findings or diagnostic testing that would support the claimant having any objective findings to support the subjective complaints at this point in time or to impair the claimant to the point where the claimant would require any restrictions/limitations or preclude the claimant from being able to work full-time.

On March 21, 2011, MetLife advised Plaintiff that after considering the information submitted in support of her claim and reviewing the Plan provisions, her claim remained denied.

Specifically , MetLife advised Plaintiff that:

> After reviewing the documentation submitted by Dr. Lewerenz, it is the medical opinion of the IPC that the medical does not support functional limitations, physical or psychiatric. The letter submitted by Dr. Lewerenz did not show documentation of any other functional examination findings or diagnostic testing that would support your having any objective findings that would support the subjective complaints at this point or that would impair you to the point where you would have any restrictions/limitations that would preclude you from being able to work full-time.
>
> In summary there is no medical evidence that would support any functional limitations that would restrict you from returning to work. Therefore your LTD claim has been denied.

AR 485.  MetLife also advised Plaintiff of her ability to appeal from this determination.

On September 16, 2011, Plaintiff submitted her appeal.  Plaintiff included medical records from her treating physician and articles regarding fibromyalgia and a statement from Dr. Lewerenz. MRIs of Plaintiff's thoracic spine, cervical spine, lumbar spine, and brain performed in March of 2011 show essentially normal results. An MRI of Plaintiff's left knee shows minimal spur formation with no evidence of fracture or dislocation.  On May 25, 2011, Plaintiff underwent a procedure at St. John Macomb Oakland Hospital to help her sleep apnea.  On October 20, 2009, Plaintiff underwent an Exercise Stress Echocardiogram, the results of which were normal.

MetLife referred Plaintiff's claim file to Dr. Jane T. St. Clair, an IPC, Board Certified in Occupational Medicine, Anesthesiology and a member of the American Academy of Disability Evaluating Physicians, to opine regarding Plaintiff's ability to engage in employment. Dr. St. Clair issued her report on November 11, 2011.  Dr. St. Clair's report listed all the documents that were reviewed, recounted her efforts in contacting Plaintiff's treating physicians, provided a summary of Plaintiff's history and responded to questions posed by MetLife.  Dr. St. Clair spoke with Dr.

Hallinen, who opined that Plaintiff had a variant of the usual fibromyalgia, walks slowly, doubted the diagnosis of mixed connective tissue disease and commented on Plaintiff's reluctance to seek psychological help. Dr. Guggenheim advised that there are no findings on examination to support an impairment. Dr. Irene C. Metro, Internal Medicine and Fibromyalgia, advised that she had not seen Plaintiff since March of 2011. Dr. Lewerenz's office advised that he would not speak to Dr. St. Clair unless he received compensation.

Dr. St. Clair opined that the medical information submitted did not support functional limitations continuously from 12/22/09 through the present time that would preclude Plaintiff from engaging in full-time sedentary employment.

> Ms. Hunt has largely self-reported subjective complaints of pain. Dr. Guggenheim has examined her most recently and described her condition as myalgias and arthralgias. During the interview she stated that she could not find exam findings that would support her inability to function in the workplace. She confirmed the lack of synovitis, swelling, painful inflamed joints and decreased range of motion. Dr. Guggenheim states she has trouble with the following activities of daily living (ADL's): tying shoes, getting in and out of bed; bending down to pick up clothing; lifting a full cup or glass to her mouth; taking a tub bath; going up and down stairs . . .
>
> Her imaging studies are normal or do not support significant findings to explain her pain complaints. The MRI of the Thoracic Spine shows a small disc herniation and osteophyte at T6-7 on the left, which mildly effaces the cord. The cervical MRI showed mild to moderate degenerative changes and no spinal stenosis. The Lumbar MRI showed minimial spondylosis with no evidence of focal disc herniation or canal narrowing. The MRI of the brain is normal. She had a negative stress echocardiogram.
>
> The medical records do not have objective findings that support her claims that she is unable to work.

Dr. St. Clair did opine that due to Plaintiff's difficulty with walking, she may not be able to perform in a job where the walking demand is greater than 2 hours in a 8 hour day. However, she further

opined that there is no clear diagnosis that explains her poor ambulation and loss of ambulatory skills is not typical in a fibromyalgia patient.

On November 18, 2011, MetLife wrote to Plaintiff's counsel, advising that Plaintiff's resulting IPC report had been forwarded to Plaintiff's treating doctors for comment. Only Dr. Rosanne Butera, Plaintiff's Chiropractor, responded, however she erroneously stated that Plaintiff's conditions of fibromyalgia, chronic fatigue syndrome, lupus, and rheumatoid arthritis have already been established through blood tests. She also stated that she had not seen Plaintiff since February 19, 2010.

On January 20, 2012, MetLife advised Plaintiff's counsel, that after its review, it determined that under the Plan its adverse determination must be upheld.

> Given the totality of the medical records, the IPC reviewer opined the records available for review did not document objective findings that support Ms. Hunt's inability to work. However, the IPC reviewer also stated that although the medical information did not support medical restrictions, according to the description given by many of her providers and because of the repeated observations, the IPC opined that she believed Ms. Hunt would not be able to perform in a job where the walking demand was greater than 2 hours in a 8 hour day. The March 1, 2011 letter from Dr. Lewerenz provided written confirmation of a poor ambulatory gait and use of a cane; however he did not back up his opinion with medical documentation and there was no clear diagnosis that explained her poor ambulation and loss of ambulatory skills were not typical in a fibromyalgia patients.
>
> \*          \*          \*
>
> Based on our review of all the information provided in Ms. Hunt's file, we have determined there was a lack of medical evidence showing a severity in an impairment whether singular or in combination to support restrictions and limitations for the time period of December 22, 2009 continuously through the present.
>
> \*          \*          \*

> Based on the available medical information for review, and the report from the Independent Physician Consultant, we were unable to conclude that she was unable to perform her job as a director, digital promotions as stated in her employer's plan for the entire time period under review. Since there were [sic] no evidence substantiating a severity in impairment(s) that she was unable to perform her job from the time period of December 2, 2009 continuously through the present time she did not meet the Definition of Disability. Therefore, we find that her benefits will remain denied.

AR 237. Plaintiff filed the instant action on March 20, 2012.

### III.   LAW & ANALYSIS

#### A.   Standard of Review

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989). The Sixth Circuit requires "a clear grant of discretion" to the administrator or fiduciary before replacing the *de novo* standard of review. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994). "When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998). "When a court reviews a decision *de novo*, it simply decides whether or not it agrees with the decision under review." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). Under the *de novo* standard, the court does not presume the correctness of the administrator's benefits determination nor does it provide deference to its decision. *Id.* at 966.

If a plan gives the administrator discretion, the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metro. Life Ins. Co.*, 925 F.2d

979, 983 (6th Cir. 1991). Such decisions are not arbitrary and capricious if the decision to terminate benefits was the product of deliberate principled decision-making and based on substantial evidence. *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 2005). "[T]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action and when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). Thus, the Court can overturn the administrator's decision "only by finding that they abused their discretion–which is to say, that they were not just clearly incorrect but downright unreasonable." *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990); *see also Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000). "It is only if the court is confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence that it may conclude that a decision was arbitrary and capricious." *Ericksen v. Metro. Life Ins. Co.*, 39 F. Supp.2d 864, 870 (E.D. Mich. 1999).

Defendant argues that the arbitrary and capricious standard of review applies to this matter. Plaintiff counters that the *de novo* standard of review applies. Plaintiff asserts that the Sixth Circuit Court of Appeals requires a clear grant of discretion to the decision making authority before replacing the *de novo* standard of review for the arbitrary and capricious standard. The relevant Plan language states:

> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it

-10-

> can be shown that the interpretation or determination was arbitrary and capricious.

Plaintiff argues that the Plan identifies HAVILA as the Plan Administrator. Further, nowhere does the Plan specify by name or otherwise identify the "other Plan fiduciaries." MetLife is not specifically identified as a plan fiduciary. Thus, Plaintiff asserts that, at the very least, the Plan is fatally ambiguous and must be construed favorably to Plaintiff.

Contrary to Plaintiff's arguments, MetLife falls squarely within the term "other Plan fiduciaries." This language has been held to invoke the arbitrary and capricious standard of review in multiple decisions of this Court. *See Edwards v. Metro. Life Ins. Co.*, 737 F. Supp.2d 743 (E.D. Mich. 2010); *see also Iley v. Metro. Life Ins. Co.*, 457 F. Supp.2d 777 (E.D. Mich. 2006), *rev'd on other grounds*, *Iley v. Metro. Life Ins. Co.*, 261 Fed. Appx. 860 (6th Cir. 2008).

Additionally, even if there was no express grant of discretionary authority to MetLife, the Plan also provides that proof of disability must be satisfactory to MetLife and such a requirement has been held to invoke the arbitrary and capricious standard of judicial review. *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380-81 (6th Cir. 1996) (claimant must submit "satisfactory proof of Total Disability to us" invokes the arbitrary and capricious standard of review); *Miller*, 925 F.2d at 983 (disability determined "on the basis of medical evidence satisfactory to the Insurance Company" invokes the arbitrary and capricious standard of review).

Lastly, the same argument Plaintiff raises here was recently rejected by this Court in *Lubeski v. Metro. Life Ins. Co.*, No. 11-15404, 2012 U.S. Dist. LEXIS 158153 (E.D. Mich. Nov. 5, 2012). Based on the foregoing, the Court agrees with Defendant that the appropriate standard of review is arbitrary and capricious.

### B. MetLife's Denial of Plaintiff's LTD Benefits Claim

Here, the Court finds that Plaintiff received a full and fair review of her claim and the denial of her claim was not arbitrary or capricious. Plaintiff's file was referred to two IPCs. Dr. Brenman is Board Certified in Physical Medicine and Physical Rehabilitation and Dr. St. Clair is Board Certified in Occupational Medicine and Anesthesiology. In preparing his report, Dr. Brenman attempted to speak with Plaintiff's treating physicians but received no response to his phone calls. Dr. St. Clair spoke with Plaintiff's treating physicians. Dr. Guggenheim advised that there are no findings on examination to support an impairment; Drs. Rumpf and Quinn did not opine on Plaintiff's disability and Dr. Lewerenz would not speak to Dr. St. Clair without compensation.

It was reasonable for Drs. St. Clair and Brenman to rely on the absence of objective medical evidence supporting functional limitations precluding sedentary employment in opining that Plaintiff is not disabled. Both of the IPCs determined that Plaintiff's laboratory studies and MRIs did not support her complaints of fatigue, nasal congestion, sore throat, dyspnea, abdominal pain, lower back pain, joint pain, cramps, muscle weakness and stiffness. On October 6, 2010, Dr. Guggenheim conducted an examination of Plaintiff which was essentially normal. Dr. Guggenheim stated in her report that she had advised her patient to return to work "as her pain and fatigue allows" and that she "suspect[ed] Ms. Hunt's pain will improve eventually." MRIs of Plaintiff's thoracic spine, cervical spine, lumbar spine, and brain performed in March of 2011 show essentially normal results

It is well settled in this circuit that it is proper and reasonable for the plan administrator to require objective evidence of functional impairment precluding sedentary employment. *See Bishop v. Metro. Life Ins. Co.*, 70 Fed. Appx. 305, 311 (6th Cir. July 10, 2003); *Rose v. Hartford Fin. Servs.*

*Group, Inc.*, 268 Fed. Appx. 444 (6th Cir. March 11, 2008); *Fant v. Hartford Life and Accident Ins. Co.*, No. 09-12468, 2010 WL 3324974, *9 (E.D. Mich. Aug. 20, 2010); *McCulloch v. Metro. Life Ins. Co.*, No. 04-10126, 2006 WL 897574, *12 (E.D. Mich. April 6, 2006).

In *Rose, supra*, in affirming the district court's judgment affirming the administrator's decision denying the plaintiff's LTD benefits claim under the arbitrary and capricious standard of review, the court explained that "the case law of this court, to which this panel must adhere, suggests that it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity." *Rose*, 268 Fed. Appx. at 453. Similarly, in *McCulloch, supra*, the court affirmed the denial of LTD benefits because the plaintiff did not submit evidence of functional limitations precluding sedentary employment:

> In this case, the defendant concluded that the plaintiff failed to establish that she was disabled within the meaning of the plan. Certainly, there is evidence that the plaintiff suffered from low back pain, underwent surgery in 1997, had an MRI that revealed degenerative disc disease, and had permanent work restrictions. However, the plaintiff's burden is to prove she is disabled within the meaning of the plan. Disability is not framed in terms of what the plaintiff does or does not suffer from. The plaintiff has presented no evidence of how her ailments impacted her ability to work and earn.

*McCulloch*, 2006 WL 897574, at *12.

Plaintiff asserts that individuals suffering with fibromyalgia are unable to provide objective clinical findings supporting their diagnosis. Plaintiff's argument is without merit, she must provide objective evidence that her fibromyalgia causes functional limitations precluding sedentary employment. The Sixth Circuit Court of Appeals has upheld a plan administrator's denial of disability benefits based on a fibromyalgia claimant's failure to provide objective evidence of functional impairment. *See Huffaker v. Metropolitan Life Ins., Co.*, 271 Fed. Appx. 493 (6th Cir. March 25, 2008) (emphasis in original) ("A claimant could certainly find burdensome a requirement

-13-

that she proffer objective evidence of fibromyalgia itself, the symptoms of which are largely subjective. But objective evidence of *disability* due to fibromyalgia can be furnished by a claimant without the same level of difficulty.").

Plaintiff further argues that this Court should ignore the opinions of MetLife's paid IPCs because they reviewed Plaintiff's LTD benefits claim under a conflict of interest. Plaintiff argues that MetLife saved substantial sums of money by denying Plaintiff's claim and the paid reviewers are well compensated for their opinions. Plaintiff directs the Court to *Kaufmann v. Metro. Life Ins. Co.*, 658 F. Supp. 2d 643 (E.D. Pa. 2009), where the district court concluded that MetLife acted arbitrarily and capriciously when it terminated the plaintiff's disability benefits. The *Kaufman* court rejected the opinions of Dr. Ephraim Brenman, who also conducted a review in the present matter.

The Court declines to reject the opinions of the IPCs. Numerous courts have upheld adverse determinations based on opinions of IPCs. *See Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010) (reliance on the opinion of an independent medical consultant is reasonable so long as the administrator did not "totally ignore" the opinion of the treating physician); *Douglas v. General Dynamics Long Term Disability Plan*, 43 Fed. Appx. 864, 869-70 (6th Cir. Aug. 7, 2002). Furthermore, plan administrators are not required to accept a treating physician's disability finding over an IPC's opinion that the claimant is not functionally impaired to support disability. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Additionally, while there is a structural conflict of interest because MetLife makes the benefits determinations and pays for the disability benefits, mere allegations without evidence showing that the conflict affected the benefit determination does not alter the arbitrary and

-14-

capricious standard of review. *See Moskal v. Aetna Life Ins. Co.*, No. 10-14890, 2012 WL 71845, *7-8 (E.D. Mich. Jan. 10, 2012) ("[I]t is not sufficient to simply point out that a structural conflict of interest exists. On the contrary, a claimant must provide 'significant evidence that the alleged conflict of interest influenced the administrator's decision.'"); *see also Cooper v. Life Ins. of North Am.*, 486 F.3d 157 (6th Cir. 2007) (mere allegations of a structural conflict of interest does not alter the arbitrary and capricious standard of review when there is no evidence that the conflict affected the determination). Here, Plaintiff has failed to come forward with any evidence suggesting that the conflict of interest influenced MetLife's benefits determination.

Accordingly, the Court concludes that MetLife's denial of Plaintiff's LTD benefits claim included a full and fair review of her claim and was reasonable in light of her failure to provide objective evidence of functional limitations precluding her from sedentary employment. Defendants are therefore entitled to judgment in their favor.

**IV.   CONCLUSION**

For the reasons stated above, Defendants' Motion to Affirm the Administrator's Determination [#22] is GRANTED. Plaintiff's Motion for Summary Judgment [#25] is DENIED. Defendants' Supplemental Brief [#35] is STRICKEN. This cause of action is dismissed.

SO ORDERED.

Dated: April 29, 2013    /s/Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE